# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:24-CV-00233-KDB-DCK

| | |
|---|---|
| JUSTIN DRAKE,<br><br>**Plaintiff,**<br><br>v.<br><br>COMMSCOPE TECHNOLOGIES, LLC,<br><br>**Defendant.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant CommScope's Motion to Dismiss (Doc. No. 19). The Court has carefully considered this motion and the Parties' briefs and exhibits. For the reasons discussed below, the Court will **DENY** the motion.

## I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

1

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.,* 637 F.3d at 448. The Court may also consider documents attached to a motion to dismiss when they are "integral and explicitly relied on in the Complaint," and where "plaintiffs do not challenge [the document's] authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015).

## II. FACTS AND PROCEDURAL HISTORY

Between 2014 and 2024, Plaintiff Justin Drake served as a Commercial Lead in CommScope's Cable and Connectivity Solutions Group (the "Group"). Amended Complaint (Doc. No. 15) at ¶ 10. During that time, he received a base salary, along with quarterly revenue-based incentives (the "Plan") pursuant to the Global Sales Incentive Compensation Policy for each year from 2021-2024 (collectively, the "Policies"). *Id*. at ¶¶ 11-12. Under the Policies, the Group earned quarterly incentives by meeting or exceeding revenue targets set by CommScope for each of its

assigned customer accounts. *Id*. at ¶ 27. However, according to CommScope, the Policies also gave the company substantial discretion with respect to the Plan.[1]

Drake alleges, however, that CommScope is "unable to accurately credit all revenue generated" by the Group because the "raw revenue sales data cannot accurately be matched" to the corresponding Group customer account. *Id*. at ¶ 28. He further alleges that CommScope is aware that its "revenue reporting system is flawed but has not remedied the problem." *Id*. at ¶ 30. As a result, a "significant amount of revenue" generated by the Group was allegedly not properly considered in calculating the quarterly incentives, leading to underpayment of the Group's members. *Id*. at ¶ 31. In other words, Drake contends that because a portion of the Group's revenue was not considered, CommScope erroneously concluded that the Group failed to meet or exceed their sales quotas and the Group received lower incentive payments. *Id*. at ¶¶ 32-33. Specifically, Drake alleges that because of the "flawed" system, CommScope owes him between $150,000-225,000 in quarterly incentives for revenue that was generated but not credited to the Group. *Id*. at ¶ 36.

On October 30, 2024, Drake filed a proposed class action suit against CommScope seeking recovery of "unpaid quarterly incentives." *Id*. at ¶ 1. Following CommScope's Motion to Dismiss

---

[1] The Policies contain multiple disclaimers, which CommScope argues gives it unfettered discretion to determine whether incentives payments will be made, and in what manner or amount–regardless of how the Policies define quotas, revenue crediting, or related terms. *See, e.g.,* Doc. No. 20-3 at 30-33, 47. Specifically, the Policies provide that "CommScope reserves the right to modify, amend or deviate from this Policy … in its sole discretion, with or without notice," and further state: "CommScope reserves the right to: (a) amend, change, or cancel all or a portion of the Policy and any Plan established pursuant to the Policy within its sole discretion; and (b) revise assigned territories, revenue quotas, reduce, modify, or withhold compensation based on individual/team performance or CommScope determination of special circumstances, with or without prior notice." *Id.* Additionally, the Policies state that "all determinations involving revenue credit shall be made in the sole discretion of the SIP committee and shall be final, binding and conclusive on all parties." Doc. No. 20 at 5.

3

(Doc. No. 10), Drake amended his Complaint to assert claims for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment on behalf of the class, and violation of the Nebraska Wage Payment and Collection Act as to himself. Doc. No. 15 at 11-14. CommScope again moved to dismiss (Doc. No. 19), and the Motion is now fully briefed and ripe for this Court's review.

### III. DISCUSSION

CommScope has moved to dismiss Drake's claims, alleging it retained full discretion to determine both whether any quarterly incentive payments would be made and in what amount, and therefore, that Drake cannot plausibly allege it violated any contract, was unjustly enriched or owed Drake any money it failed to pay. The Court disagrees.

#### A. Breach of Contract Claim

Drake first alleges that under the Plan's terms he is entitled to $150,000-225,000 in incentive pay that he did not receive. He contends that because of the flawed revenue crediting system, he wasn't credited for all revenue that should have been included in his quota and incentive pay calculations. He argues that this failure violates the Plan's terms.

At the motion to dismiss stage, Drake need only plausibly allege that the Plan "amounted to an enforceable contract," and that CommScope breached it. *Waerness v. Allscripts Healthcare US, LP*, No. 5:14-CV-335-F, 2015 WL 545788, at *3-4 (E.D.N.C. Feb. 10, 2015). In North Carolina, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract."[2] *WFG Nat'l Title Ins. Co. v. Northway Homes LLC*, No.

---

[2] "The basic elements of any contract are mutual assent—i.e., offer and acceptance—and consideration." *Jackson v. Home Depot U.S.A., Inc.*, 919 S.E.2d 199, 210 n.1 (N.C. 2025).

4

3:24-CV-00808-KDB-SCR, 2025 WL 2417736, at *7 (W.D.N.C. June 30, 2025) (quoting *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 276 (2019)).

When an employer "promises to provide wages or other employment benefits [such as incentive or bonus pay] and the employee accepts the offer by entering or continuing employment, a unilateral contract is formed." *Lorenzo v. Prime Commc'ns, L.P.*, No. 5:12-CV-69-H-KS, 2018 WL 2296341, at *5 (E.D.N.C. Mar. 29, 2018) (first citing *Cheek v. City of Greensboro*, 152 F. Supp. 3d 473, 477 (M.D.N.C. 2015), *aff'd sub nom. Davis v. City of Greensboro*, 667 F. App'x. 411 (4th Cir. 2016); and then citing *White v. Hugh Chatham Mem'l Hosp., Inc.*, 97 N.C. App. 130, 131-32 (1990)). "The terms of the contract are those established by the employer's unilateral offer." *Id.* (citations omitted). Nevertheless, "where an employer retains the right to make unilateral modifications to the plan at any time, there can be no reasonable belief that an offer was made with regard to the incentive compensation." *Waerness,* 2015 WL 545788, at *4 (quoting *Maxwell v. Vertical Networks, Inc.,* No. 03 C 5715, 2005 WL 950634, at *6 (N.D. Ill. Mar. 18, 2005)).

Here, Drake has plausibly alleged CommScope made him an offer by implementing a quarterly incentive plan, which he accepted though continued employment. Moreover, he has plausibly alleged CommScope breached the contract by failing to credit all the revenue described by the Plan and Policies. Notably, CommScope does not directly address Drake's allegations of a flawed revenue crediting system. Instead, it argues that it retained discretion to determine revenue credit and to unilaterally amend the Plan and Policies–though it does not claim to have actually modified either. In short, it claims no contract was ever formed.

Whether or not a contract was formed or breached based on CommScope's retained rights to unilaterally modify the Plan is, at least in part, a factual question that cannot be resolved at the

5

motion to dismiss stage, and is more properly answered after the Parties have had the benefit of developing the record through discovery.³ Therefore, the Court will deny the motion to dismiss Plaintiff's breach of contract claim.

### B. Good Faith and Fair Dealing Claim

Drake further alleges that CommScope breached the implied covenant of good faith. As courts have long recognized, every contract contains "an implied covenant of good faith and fair dealing." *First Protective Ins. Co. v. Rike*, 516 F. Supp. 3d 513, 531 (E.D.N.C. 2021) (quoting *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228 (1985)). Thus, "where the parties have executed a written contract, an action for breach of the covenant of good faith and fair dealing is part and parcel of a claim for breach of contract." *Id.* (quoting *McKinney v. Nationstar Mortg., LLC*, No. 5:15-CV-637-FL, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016)) (internal quotations omitted). However, if no contract exists, there is no cause of action for breach of an implied covenant of good faith and fair dealing. *Reis v. Fifth Third Bank*, No. 520CV00160KDBDCK, 2021 WL 278058, at *5 (W.D.N.C. Jan. 27, 2021) (citing *Dove Air, Inc. v. Fla. Aircraft Sales, LLC*, No. 1:10cv47, 2011 WL 3475972 at *10 (W.D.N.C. Aug. 9, 2011)).

Here, because Drake has plausibly alleged the existence of a contract, his claim for breach of good faith in the implementation of the contract is likewise plausibly alleged, and the motion to dismiss will be denied.

### C. Unjust Enrichment Claim

In the alternative, Drake alleges that CommScope was unjustly enriched by failing to credit

---

³ Likewise, whether Drake waived his right to litigate by failing to follow internal dispute resolution procedures is a factually dependent affirmative defense that does not affect the sufficiency of the pleadings or the viability of Drake's claims at this early stage of the case.

him all the revenue he believes is encompassed within the Policy's definition of "revenue."[4] In North Carolina, a plaintiff may establish a claim for unjust enrichment by showing that he (1) "conferred a benefit on the other party," (2) "not through interference in the other party's affairs," (3) "not gratuitously," and (4) "with measurable value," which (5) the defendant "consciously accepted." *Wilkins v. Consol. Commc'ns Holdings, Inc.*, No. 5:23-CV-655-FL, 2025 WL 818577, at *6 (E.D.N.C. Mar. 14, 2025) (first citing *Krawiec v. Manley*, 370 N.C. 602, 615 (2018); and then citing *JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 230 N.C. App. 537, 542 (2013)). That said, "[n]ot every enrichment of one by the voluntary act of another is unjust. Where a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched. The recipient of a benefit voluntarily bestowed without solicitation or inducement is not liable for their value." *Mountain Land Properties, Inc. v. Lovell*, 46 F. Supp. 3d 609, 623 (W.D.N.C. 2014) (quoting *Wright v. Wright,* 305 N.C. 345, 350 (1982)) (internal quotations and additional citations omitted).

Drake alleges that the "revenue" used to determine whether he met his quotas–and thus, the amount of his incentive pay–is defined as "net bookings for services orders," and that he reasonably expected to be compensated based on that definition. Doc. Nos. 15 at 6; 24 at 20. He further claims that CommScope knew it could not accurately allocate that data, yet calculated incentive pay based on the flawed inputs. As a result, CommScope retained the difference between its calculated incentive payment and the amount Drake claims he was entitled to, thereby benefiting from the alleged underpayment. Indeed, "[w]hen an employer pays an employee a base

---

[4] "An unjust enrichment claim is a claim in quasi contract or a contract implied in law." *McCabe v. Abbott Labs., Inc.*, 47 F. Supp. 3d 339, 348 (E.D.N.C. 2014) (quoting *Rev O, Inc. v. Woo*, 220 N.C. App. 76 (2012)) (internal quotations omitted). Therefore, "if there is a contract between the parties[,] the contract governs the claim and the law will not imply a contract." *Id.* (quoting *Booe v. Shadrick,* 322 N.C. 567, 570 (1988)).

7

Case 5:24-cv-00233-KDB-DCK    Document 28    Filed 09/30/25    Page 7 of 9

salary with the possibility of commissions [such as incentive pay], but does not retain absolute discretion as to whether to pay [it], an employee who has not been paid the full amount of commissions can state a claim for unjust enrichment if the facts support an expectation of payment."[5] *Stephenson v. Int'l Bus. Machines Corp.*, No. 1:17-CV-1141, 2020 WL 3960955, at *12 (M.D.N.C. July 13, 2020) (citing *Vinson v. Int'l Bus. Machines Corp.*, No. 1:17-CV-00798, 2018 WL 4608250, at *7 (M.D.N.C. Sept. 25, 2018)) (internal quotations and additional citations omitted). Accordingly, Drake has plausibly alleged a claim for unjust enrichment.

### D. Nebraska Wage Payment Claim

Finally, Drake alleges that CommScope violated the Nebraska Wage Payment and Collection Act ("NWPCA") as applied to him. Under the NWPCA, wages are defined as "compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis." *Rudolf v. Tombstone Pizza Corp.*, 214 Neb. 276, 280 (1983). The Act further "permits an employee to whom wages are owed to sue the employer for payment." *Id.* at 281.

To prevail, a plaintiff must also demonstrate that "the disputed wages were previously agreed to by [the] defendant," *Morales v. Greater Omaha Packing Co., Inc.*, No. 8:08CV161, 2008 WL 5255807, at *2 (D. Neb. Dec. 15, 2008), which itself "need only be that the defendant agreed to pay [the plaintiff] at the appropriate rate of pay for the duties [he was] performing." *Id.* (quoting *Hawkins v. City of Omaha,* 261 Neb. 943, 958 (2001)) (internal quotations omitted). Here, Drake has alleged that the disputed incentive pay constituted compensation for his labor, was agreed to

---

[5] As noted, whether CommScope can demonstrate that it retained "absolute discretion as to whether to pay" the quarterly incentives in any amount, is a question the Court cannot properly determine at the motion to dismiss stage.

by the Parties, and that he fulfilled the conditions required to earn it. Nonetheless, due to the "flawed" revenue crediting system, he claims he received only a portion of what was owed. Therefore, at this early stage of litigation, the Court finds that Drake has plausibly alleged a violation of the NWPCA. For the foregoing reasons, the Court will deny CommScope's Motion to Dismiss.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 19) is **DENIED**; and
2. This case shall **proceed toward trial on the merits** in the absence of a voluntary resolution of the dispute among the Parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 29, 2025

Kenneth D. Bell
United States District Judge